**Jose A. SONODA, Plaintiff–Appellee,**

v.

**Antonio R. CABRERA; Froilan C. Tenorio; Commonwealth of the Northern Mariana Islands, Defendants–Appellants.**

**No. 97–16068.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1999.

Decided Aug. 31, 1999.

Mickeal Gehringer, Assistant Attorney General, Saipan, MP, for the appellants.

Pamela Brown, Saipan, MP, and Theodore Mitchell, Saipan, MP (argued), for the appellee.

Appeal from the Supreme Court for the Northern Mariana Islands; Taylor, Chief Justice, Villagomez and Atalig, Associate Justices, Presiding. D.C. No. CV–96–00001.

Before: CHOY, FERNANDEZ, and THOMAS, Circuit Judges.

FERNANDEZ, Circuit Judge:

Froilan C. Tenorio, Governor of the Commonwealth of the Northern Mariana Islands (CNMI), appeals from a decision of the CNMI Supreme Court that a portion of CNMI Executive Order 94–3 violated the CNMI Constitution.[1] We dismiss the appeal for lack of jurisdiction.

## BACKGROUND

Jose A. Sonoda brought suit in United States District Court for the Northern Mariana Islands pursuant to 42 U.S.C. § 1983 and alleged that he was wrongfully terminated without due process from his position as Director of the Customs Services Division of the CNMI Department of Finance. Soon thereafter, Sonoda filed a motion for summary judgment on the ground that section 509(a) of Executive Order 94–3 (E.O.94–3), which, in effect, provided that Sonoda could be dismissed without cause, constituted an unconstitutional exercise of executive power and was promulgated in violation of Article XX, Article II § 5, and Article III §§ 14–15 of the CNMI Constitution. Because the resolution of Sonoda's motion turned upon an unresolved construction of local CNMI law, the district court certified the question of whether E.O. 94–3 violated the CNMI Constitution to the CNMI Supreme Court. The CNMI Constitution authorizes the governor to "make changes in the allocation of offices, agencies and instrumentalities and in their functions and duties that are necessary for efficient administration." CNMI Const. art. III, § 15. In reliance on that grant of power, Governor Tenorio submitted E.O. 94–3 to the North-

ern Mariana Islands Commonwealth Legislature in June of 1994. Section 509(a) of E.O. 94–3 provides in its entirety that:

In order to assure the accountability of government managers, all officials at or above the level of division director, or the equivalent by whatever title known, shall be appointed by and serve at the pleasure of the Governor, provided that such official shall report to and serve under the direction of the head of any supervisory official, such as a department head.

The order became effective because a majority of each house of the legislature failed to specifically modify or disapprove of its contents. *See* CNMI Const. art. III, § 15.

Interpreting E.O. 94–3 in light of the other provisions of the CNMI Constitution, the CNMI Supreme Court determined that the promulgation of section 509(a) of the Order was an unconstitutional exercise of executive power. *See Sonoda v. Cabrera*, No. 96–001, slip op. at 4 (N. Mar. I. April 9, 1997). Specifically, the Court ruled that: (1) while Article III of the CNMI Constitution vests the Governor with the power to reorganize the executive branch, he may "not create a system whereby employment positions would be created and appointed at his pleasure"; and (2) to the extent Article XX of the CNMI Constitution provides that only the legislature may exempt positions from the civil service, the Governor's attempt to do so was an unconstitutional usurpation of the legislature's law-making function. *Id.* at 3. The Governor then filed a timely notice of appeal with us.

## JURISDICTION

Sonoda asserts that we lack jurisdiction over this appeal because the Governor did not raise a federal question when the case was before the CNMI Supreme Court, the issue decided by the Court did not involve

---

1. The Commonwealth of the Northern Mariana Islands and its Finance Secretary, Antonio R. Cabrera, also appeal. What we say

regarding the Governor's appeal also applies to them.

the Constitution, treaties or laws of the United States, and, at any rate, the Court's determination was only an answer to a question from the district court and is, therefore, not final.

■ We, of course, have the power, nay the duty, to decide whether we have jurisdiction. *See WMX Techs., Inc. v. Miller,* 104 F.3d 1133, 1135 (9th Cir.1997) (en banc). To put it another way, "we have jurisdiction to determine our own jurisdiction." *Ferreira v. Borja,* 93 F.3d 671, 673 (9th Cir.1996) (*Ferreira II*). In this instance, our jurisdiction is governed by 48 U.S.C. § 1824(a) which declares, in pertinent part, that at this time we "have jurisdiction of appeals from all final decisions of the highest court of the Northern Mariana Islands from which a decision could be had in all cases involving the Constitution, treaties, or laws of the United States, or any authority exercised thereunder...."

■ We have previously explained that this means that our jurisdiction is similar to that which the United States Supreme Court exercises over the decisions of the highest state courts. *See Milne v. Hillblom,* 165 F.3d 733, 735 (9th Cir.1999); *Santos v. Nansay Micronesia, Inc.,* 76 F.3d 299, 301 (9th Cir.1996). And where a party seeks to rest our jurisdiction on the theory that the CNMI Supreme Court decided a federal issue, we have generally refused to take the issue up unless it was adequately raised in that court. *See Santos,* 76 F.3d at 301. We have amended that to add that "[t]his court will review federal issues even if not properly raised in the Commonwealth Court, however, if that court in fact passed upon those issues. We do not reach purported federal questions neither raised nor decided by the CNMI Supreme Court." *Id.* (citation omitted).

■ While that is the core of our jurisdiction, it is not quite all because, even though the CNMI Supreme Court is the " 'ultimate expositor' of local Northern Marianas law," we will still examine its interpretation "if that interpretation is 'untenable or amounts to a subterfuge to avoid federal review of a constitutional violation.' " *Ferreira v. Borja,* 1 F.3d 960, 962 (9th Cir.1993) (*Ferreira I*) (citations and some internal quotation marks omitted); *see also CNMI v. Lizama,* 27 F.3d 444, 446, 448 (9th Cir.1994). But we have found it necessary to further explain or hedge that statement about the reach of our jurisdiction. As we have pointed out, the word "untenable" could be read to mean that "patently erroneous decisions of CNMI law are reviewable by our court, even absent a federal Constitutional or statutory issue." *Castro v. Hotel Nikko Saipan, Inc.,* 96 F.3d 1259, 1261 (9th Cir. 1996). Nothing could be further from the truth, for we have "jurisdiction only over those 'untenable' decisions of local law that implicate an appellant's federal rights." *Id.*

■ Sonoda is correct when he points out that the Governor did not directly raise any federal question when he was before the CNMI Supreme Court, and that the Court itself did not decide a federal question. What the Governor asked the Court to decide was nothing more than a local question, which involved construction of various parts of the Commonwealth Constitution.

The Court merely had to determine whether by using Article III § 15 of the Commonwealth Constitution a governor could remove public employees from the coverage of Article XX of that same Constitution, which provides for "a non-partisan and independent civil service." Individuals can be exempted from the system, as provided by law, and the Court has previously held that "[o]nly the legislature can exempt government employees from the civil service system," except to the extent that the Civil Service Commission itself has an exemption power. *Manglona v. CNMI Civil Service Comm'n,* 3 N. Mar. I. 243, 249 (1992). That is a quintessential local issue.

At no time did the Governor suggest to the CNMI Supreme Court that it would violate some supervening United States

constitutional provision or any other federal law if it held against him. He did not tell it that it would violate the separation of powers clause of the Commonwealth Covenant. *See* 48 U.S.C. § 1801 (Commonwealth Covenant art. II, § 203(a)). Had he done the latter, we are of the opinion that the issue would still be far too tangential to the local law issue before the Court to make any difference. *See Milne*, 165 F.3d at 737; *Diamond Hotel Co., Ltd. v. Matsunaga*, 99 F.3d 296, 298 (9th Cir. 1996). Certainly, there was nothing inherently federal in the issues presented. Perhaps this reflection will suggest that we are getting a bit ahead of ourselves. But it does form a glissade to the somewhat more substantive issue of whether any federal law at all is involved. That issue is somewhat entangled with the first one. *See Boddy v. Guerrero*, 179 F.3d 714, 716–17 (9th Cir.1999).

■ No doubt there are federal cases on the doctrine of separation of powers. *See, e.g., Springer v. Philippine Islands*, 277 U.S. 189, 201–02, 48 S.Ct. 480, 482, 72 L.Ed. 845 (1928); *Camacho v. Civil Service Comm'n*, 666 F.2d 1257, 1263–64 (9th Cir.1982). But those do not serve to tell us that every time the CNMI Supreme Court exercises its undisputed judicial power, *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), to construe the Commonwealth Constitution, a federal question is implicated. Were it otherwise, local law and federal law would be so mixed as to become a eutectic. We have eschewed that approach. *See Sablan v. Manglona*, 938 F.2d 970, 971 (9th Cir. 1991).

■ We are also mindful of federal cases which deal with the presumption that when a power is conferred upon the president, that power was exercised properly. *See, e.g., Martin v. Mott*, 25 U.S. (12 Wheat) 19, 32–33, 6 L.Ed. 537 (1827); *American Fed'n of Gov't Employees v. Reagan*, 870 F.2d 723, 727 (D.C.Cir.1989). But questions of whether the executive has acted within the proper sphere of the powers conferred upon him are still subject to judicial review. *See, e.g., Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587–89, 72 S.Ct. 863, 866–67, 96 L.Ed. 1153 (1952); *Humphrey's Ex'r v. United States*, 295 U.S. 602, 625–26, 55 S.Ct. 869, 873, 79 L.Ed. 1611 (1935). At any rate, that does not turn every decision regarding the powers conferred upon the Governor by the CNMI Constitution into a federal question. In fact, the issue here is whether he had the power at all, and that is surely a local inquiry.

■ In short, throughout this appeal the Governor confuses the distinction between "a search for persuasive authority" and "a search for binding precedent." *Camacho*, 666 F.2d at 1264. Federal cases may be the former when the CNMI Supreme Court construes the Commonwealth Constitution; they are not the latter.

■ What we have just said also demonstrates that even if we were to treat the CNMI Supreme Court's decision as untenable, which we do not, it is still a purely local question and does not implicate any federal rights. *See Castro*, 96 F.3d at 1261. No federal questions were presented to the Court, none were decided by it, and no federal rights were implicated. We do not have jurisdiction.[2]

## CONCLUSION

The Governor asks that we opine on the distribution of power within the CNMI Government. We are well aware of the fact that it is an issue of immense importance for him and for the Commonwealth.

---

**2.** We reject Sonoda's claim that the CNMI Supreme Court decision is not final because it was in answer to a question certified to it by the district court. That Court's determination of local law in answer to a certified question is binding. *See Reinkemeyer v. Safeco Ins. Co. of America*, 166 F.3d 982, 984 (9th Cir.1999);

*see also* 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4248 n.67 (1988 and 1999 Supp.). It is, moreover, a final decision from CNMI's highest court. *See* 48 U.S.C. § 1824(a).

But immense issues are not inevitably federal issues. So it is here. Because the instant inquiry does not involve "the Constitution treaties, or laws of the United States," we do not have jurisdiction to hear this appeal.

DISMISSED.