**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10036 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-01040-MHM-4 |
| v. | |
| CORDAE L. BLACK, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10037 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-01040-MHM-6 |
| v. | |
| ANGEL MAHON, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10039 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-01040-MHM-2 |
| v. | |
| KEMFORD J. ALEXANDER, | |
| Defendant - Appellant. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

| UNITED STATES OF AMERICA, | No. 11-10077 |
| --- | --- |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-01040-MHM-3 |
| v. | |
| TERRANCE L. TIMMONS, | |
| Defendant - Appellant. | |

Appeals from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted January 16, 2013
San Francisco, California

Before: NOONAN, GRABER and FISHER, Circuit Judges.

Defendants appeal their jury convictions of conspiracy to possess cocaine

with intent to distribute cocaine and use of a firearm in furtherance of a drug

trafficking offense.[1]  We reject their various arguments, and we affirm.

### 1.  Motion to Sever

Defendant Timmons, joined by Mahon, argues that the district court abused

its discretion in denying his motion to sever his trial from that of his codefendants.

Timmons waived this issue by failing to renew his motion to sever at the

close of evidence.  *See United States v. Alvarez*, 358 F.3d 1194, 1206 (9th Cir.

---

[1] Some of the issues raised by these consolidated appeals are addressed in a
concurrently filed published opinion.

2004).  He has not demonstrated that either of the recognized exceptions to the renewal requirement applies.  *See United States v. Decoud*, 456 F.3d 996, 1008 (9th Cir. 2006) ("A defendant . . . will not be found to have waived his challenge if he can show either that he diligently pursued severance or that renewing the motion would have been an unnecessary formality.").  We reject his argument that filing a motion to sever and arguing the motion at a hearing constitute diligent pursuance of severance; such an argument would allow the exception to swallow the rule of renewal.  Timmons' argument that "it was apparent" the district court would deny a renewed motion to sever is conclusory and not supported by the record.

Mahon likewise waived this issue by failing to renew the motion at the close of evidence.[2]  *See Alvarez*, 358 F.3d at 1206.  He also did not raise the issue in his briefs before this court, instead filing a "notice of joinder" in Timmons' argument only days before oral argument; nor did he argue why the district court's failure to sever his trial from that of his codefendants was an abuse of discretion as to him. *See United States v. Anekwu*, 695 F.3d 967, 985 (9th Cir. 2012) (argument is waived when it was not raised in an appellant's opening brief); *Milne v. Hillblom*,

_____

[2] Unlike Timmons, Mahon failed even to file a pretrial motion to sever.

3

165 F.3d 733, 736 n.6 (9th Cir. 1999) (argument is waived when an appellant "fails to present any argument or pertinent authority to support" it).

## 2. Entrapment Jury Instructions

**a.** We reject Black, Alexander and Mahon's argument that the district court's jury instruction on entrapment was erroneous because it articulated the two elements of entrapment in the disjunctive. The district court properly instructed the jury that, to disprove entrapment, the government must prove *either* predisposition *or* noninducement. *See United States v. Varela*, 993 F.2d 686, 689 (9th Cir. 1993); *United States v. Hoyt*, 879 F.2d 505, 509 (9th Cir. 1989).

**b.** To the extent Alexander contends that the district court erroneously failed to use a special verdict form, he waived this argument by failing to specifically and distinctly raise and argue it in his opening brief. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). Additionally, Alexander failed to raise this issue before the district court, and he has not cited any Ninth Circuit authority requiring the use of a special verdict form. Therefore, he has not demonstrated plain error. *See United States v. Johnson*, 626 F.3d 1085, 1088 (9th Cir. 2010).

**c.** We reject Alexander's argument that the entrapment jury instruction overemphasized the predisposition element, was confusing, limited the factors the jury could consider or constituted improper comment. The district court did not

4

abuse its discretion in its formulation of the entrapment jury instruction, which mirrored Ninth Circuit Model Jury Instruction 6.2. The instruction as formulated contained correct statements of the law regarding entrapment and did not mislead the jury in any way. *See United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1991). Including legally accurate definitions of "predisposition" and "inducement" – terms that may not fall within the common knowledge of most jurors – did not hinder the jury as it deliberated, nor did the definitions improperly limit factors the jury could consider as predisposition or inducement.

**d.** We reject Mahon's argument that the district court erroneously instructed the jury regarding inducement. The jury instruction regarding the types of rewards that may constitute government inducement for purposes of entrapment is consistent with *United States v. Spentz*, 653 F.3d 815, 819 (9th Cir. 2011), as well as prior circuit cases upon which *Spentz* relied.

### 3. Sufficiency of Evidence Regarding Entrapment Defense

We reject Alexander and Mahon's argument that the government failed to disprove entrapment. The government presented sufficient evidence from which the jury could conclude that the defendants were not induced by government agents to commit the crimes charged. *See United States v. Mejia*, 559 F.3d 1113, 1116 (9th Cir. 2009) (government must prove either predisposition or noninducement).

5

Alexander's argument that the proceeds of the hypothetical stash house robbery constitute inducement is foreclosed by *Spentz*, 653 F.3d at 820 n.4 ("[T]he reward promised cannot be the criminal reward but must be some other, non-criminal reward that the individual receives for committing the crime."). Alexander's argument that a proposal to steal drugs from drug dealers rather than innocent people can constitute government inducement is unsupported by citation to any authority.

Finally, there is no evidence in the record that the government preyed on Mahon's purported need for comradeship or that Mahon demonstrated his need for comradeship to the government such that it could have taken advantage of such a need, thus distinguishing this case from *United States v. Poehlman*, 217 F.3d 692 (9th Cir. 2000).

### 4.  Conspiracy Between a Defendant and Government Agent

Alexander argues that the government has not established that he conspired with anyone other than Agent Zayas and thus his conviction must be reversed.[3]

The government presented sufficient evidence from which a rational trier of fact could have found the existence of a conspiracy and Alexander's connection to that conspiracy. *See United States v. Reed*, 575 F.3d 900, 923-24 (9th Cir. 2009). This case is distinguishable from *United States v. Paret-Ruiz*, 567 F.3d 1 (1st Cir. 2009), in which the court concluded that the government had presented evidence only that Paret-Ruiz was a middleman who *hoped to consummate* an agreement between an undercover agent and other individuals to accomplish an illegal objective, and that there was no evidence that Paret-Ruiz and the other individuals were actually a team committed to working together to traffic drugs. *Id.* at 7. Here, the government presented ample evidence that a group of individuals, in addition to Agent Zayas and including Alexander, agreed to and intended to perform a stash house robbery.

---

[3] Mahon joined Alexander's argument, which was specific to the evidence regarding *Alexander's* participation in the conspiracy, but Mahon has not made any arguments regarding the government's lack of evidence that *he* conspired with anyone but an agent. His argument is therefore waived. *See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . . [J]udges are not like pigs, hunting for truffles buried in briefs." (internal quotation marks omitted)).

7

## 5. Sufficiency of the Evidence of Involvement in the Conspiracy

Mahon and Timmons argue that the government presented insufficient evidence that they were participants in the conspiracy and that the evidence showed only their "mere presence" by their "association" with conspirators.

Viewed in the light most favorable to the government, it presented the following evidence pertinent to Mahon:

- Simpson testified that Mahon was present at a July 26 meeting at Alexander's house that took place to discuss the home invasion.

- Agent Zayas testified that Mahon attended a July 27 meeting with him, along with Black, Alexander, Simpson and Marsh. The day before, Zayas had informed Simpson and Black to bring with them on July 27 any other individuals who would be participating in the robbery. When the group arrived, and only Black, Alexander and Simpson exited the vehicle and began speaking with Zayas about the robbery, Zayas asked Alexander to get the other two individuals, including Mahon, from the vehicle if they would be participating in the robbery, and Alexander did so. Zayas further testified that all of the meeting attendees were engaged in the discussion and that he observed Mahon nodding his head during the meeting.

- Simpson testified that Mahon was present at a July 27 meeting at Alexander's house, along with Black, Simpson, Marsh and Alexander, that took place after the meeting with Agent Zayas to discuss the robbery.

- Simpson testified that at the July 27 meeting at Alexander's house, Alexander assigned to Mahon the role of entering the stash house and carrying a firearm.

8

- Agent Zayas testified that Mahon showed up on July 28, the date of the fictitious robbery, along with Timmons, Alexander and Black. He further testified that when the two vehicles with defendants followed him to the storage facility, Mahon got out of the vehicle and Zayas showed Mahon the unit in which the crew was to place Zayas' portion of the drugs.

This evidence is sufficient for the jury to have reasonably found that Mahon was a knowing participant in the conspiracy, and the government's failure to provide evidence of Mahon's oral assent to the conspiracy does not undermine his conviction. *See United States v. Perlaza*, 439 F.3d 1149, 1177 (9th Cir. 2006) ("[O]nce the existence of a conspiracy is established, a defendant may be convicted of knowing participation therein if the evidence establishes, beyond a reasonable doubt, even a slight connection between the defendants and the conspiracy." (internal quotation marks omitted)); *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001) ("A connection to the conspiracy may be inferred from circumstantial evidence."); *United States v. Esparza*, 876 F.2d 1390, 1392 (9th Cir. 1989) ("Proof of the defendant's connection to the conspiracy requires a showing that the defendant knew of the existence of the conspiracy and acted with the intent to further its goals.").

The government also presented sufficient evidence to support Timmons' conspiracy conviction. Given the evidence that Timmons attended the July 27

9

meeting at Alexander's house at which the robbery was being discussed and that he was present in the vehicle as Agent Zayas reiterated that there would be 50 kilograms of cocaine that would be split evenly among the group, a rational trier of fact could reasonably conclude that Timmons had knowledge of the conspiracy. Additionally, there was evidence that Timmons was assigned a role in the conspiracy (as a driver), that he acted in a way consistent with that role (by driving his vehicle on July 28) and that his vehicle contained the precise number of guns corresponding to the number of guns that were assigned to the conspirators. This evidence was sufficient for a rational trier of fact to conclude that Timmons acted with an intent to further the conspiracy's goals. *See Esparza*, 876 F.2d at 1392.

Timmons' argument that we should disregard Simpson's testimony because it was incredible, misleading, inconsistent, unsubstantiated and dishonest is foreclosed by our precedent. Simpson's testimony was not facially incredible or unsubstantiated, and we may not resolve credibility determinations or factual disputes in his favor. *See United States v. Lopez*, 803 F.2d 969, 973 (9th Cir. 1986).

**6. Sufficiency of the Evidence of Involvement in Weapons Possession**

We reject Mahon and Timmons' argument that there was insufficient evidence to support their convictions for aiding and abetting the possession of a

10

firearm in furtherance of a drug trafficking offense. The government presented sufficient evidence to support appellants' convictions under the co-conspirator (*Pinkerton*) liability jury instruction. The four firearms in Timmons' vehicle – following Alexander's instruction that Alexander's brother-in-law go get four firearms and Alexander's assignment of carrying firearms to four of the defendants – supports a jury finding that at least one of the defendants (all of whom were found to be members of the conspiracy) possessed firearms in furtherance of a drug trafficking offense (the robbery of the stash house). Because Simpson testified that Mahon and Timmons were each present on occasions when guns were discussed in connection with the robbery, the evidence was also sufficient that the crime of possession of a firearm fell within the scope of the conspiracy and was foreseeable to Mahon and Timmons. *See United States v. Bingham*, 653 F.3d 983, 997 (9th Cir. 2011) (listing elements of *Pinkerton* liability).

**7. Constructive Amendment of Indictment**

Mahon argues that the conspiracy jury instruction constructively amended the indictment. Mahon failed to object at trial that there was a constructive amendment to the indictment, so we review for plain error. *See United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002).

11

**a.** The jury instructions did not constructively amend the indictment because count one of the indictment charged defendants with conspiracy to possess with intent to distribute cocaine, whereas the court instructed the jury that the government must prove that "there was an agreement . . . to commit at least one crime as charged in the indictment." Taking the jury instructions as a whole as we must, *see Panther v. Hames*, 991 F.2d 576, 581 (9th Cir. 1993), the district court's instructions made clear that the government was required to prove that the crime agreed to was possession with intent to distribute cocaine.

**b.** The district court did not plainly amend count one of the indictment because the indictment charged defendants with "knowingly and intentionally" conspiring to possess with intent to distribute cocaine whereas the jury instructions required that defendants only "knowingly" conspired. Viewing the jury instructions as a whole, we conclude that the district court fairly instructed the jury that the mens rea required for conspiracy was "knowingly" and "intentionally." Additionally, even if the district court had plainly erred, Mahon does not argue or explain how that error affected his substantial rights or seriously affected the integrity of his trial. *See United States v. Cannel*, 517 F.3d 1172, 1176 (9th Cir. 2008) ("Relief for plain error is available if there has been (1) error; (2) that was

12

plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings.").

## 8.  May 4, 2010 Jury Admonition

We reject Mahon's argument that he is entitled to a new trial because the district court failed to admonish the jury upon evening recess on May 4, 2010.  On that date, immediately before releasing the jury to begin its deliberations after closing argument, the district court instructed the jury that it was under a continuing admonition that it must abide by each day that it went home after deliberating.  That the district court thereafter recalled the jury to briefly mention a minor evidentiary matter does not undermine the continuing admonition that was imposed shortly before.  Even if the district court had plainly erred, Mahon has not established that any prejudice resulted from the error.  *See Cannel*, 517 F.3d at 1176.

## 9.  Evidentiary Issues

**a.**  Mahon and Timmons waived their argument regarding the admission of an audio recording of a conversation between Timmons and Black when they were arrested and placed into a police car by failing to make any argument or cite any authority in support.  *See Milne*, 165 F.3d at 736 n.6; *United States v. Tisor*, 96 F.3d 370, 376 (9th Cir. 1996).  Even if this argument had not been waived, the

13

district court did not abuse its discretion in admitting the recording, because the unintelligible portions of the recording were not "so substantial that the recording as a whole is untrustworthy." *United States v. Abonce-Barrera*, 257 F.3d 959, 963 (9th Cir. 2001) (internal quotation marks omitted). Additionally, based on the context in which the recording was introduced, statements made during the recording and the other recordings that were played during trial, the jury could reasonably determine which defendants were speaking on the recording.

**b.** We reject Mahon and Timmons' argument that the district court erred in failing to order a mistrial after the government referred to a "transcript" during closing argument contrary to the district court's orders. During trial, the defendants objected to the government's statement but did not move for a mistrial. The district court accepted the objection and provided a clear curative instruction (as Timmons requested). In light of these curative actions, the district court did not err, much less do so plainly, in failing to sua sponte declare a mistrial. *See United States v. Banks*, 514 F.3d 959, 973 (9th Cir. 2008) ("[W]e review the district court's failure to sua sponte declare a mistrial for plain error.").

**c.** Mahon and Timmons waived their argument regarding the denial of testimony impeaching the credibility of Agent Zayas by failing to make any argument in support, or even make clear on what legal basis they now challenge

14

the district court's ruling. *See United States v. Williamson*, 439 F.3d 1125, 1138 (9th Cir. 2006) ("'We will not manufacture arguments for an appellant' who has failed 'to present . . . specific, cogent argument[s] for [the court's] consideration,' especially where 'a host of other issues are presented for review.'" (alterations in original) (quoting *Entm't Research Grp.*, 122 F.3d at 1217)).

**d.** Mahon and Timmons waived their argument regarding the district court's denial of a mistrial after Agent Zayas testified about the dangerousness of using an actual, rather than hypothetical, stash house in a reverse sting operation. They failed to make any argument in support, or even make clear on what legal basis they now challenge the district court's ruling. *See id.*

**e.** Mahon and Timmons waived their argument regarding the admission of testimony by Simpson that Timmons was an "inmate" by failing to make any argument or cite any authority in support. *See Milne*, 165 F.3d at 736 n.6; *Tisor*, 96 F.3d at 376.

**f.** We reject Mahon and Timmons' argument that the district court erred in denying a motion for mistrial after the government stated during closing argument that the defendants, who were not charged with murder, were "prepared to kill" on the date of the robbery. Unlike *United States v. Rodrigues*, 159 F.3d 439 (9th Cir. 1998), the government did not, through its comments, mislead the jury on the law

or effectively slander defense counsel.  This case is also distinguishable from *United States v. Wilson*, 135 F.3d 291 (4th Cir. 1998), because here there was both a basis in the evidence for the prosecutor's statement, and it was relevant to the government's burden in proving defendants' predisposition.  The district court therefore did not abuse its discretion in denying a mistrial following the government's statement.  *See United States v. Allen*, 341 F.3d 870, 891 (9th Cir. 2003) (stating that denials of motions for mistrial are reviewed for abuse of discretion).

**g.**  We reject Mahon and Timmons' argument that the district court erred in admitting testimony by Agent Atencio that he observed a struggle between Timmons and a SWAT team member who was attempting to arrest Timmons because the statement was unsupported by evidence, irrelevant and prejudicial.  The statement was supported by evidence because Agent Atencio was a percipient witness, and his testimony *is* evidence.  It was relevant because it was elicited by Timmons' counsel in response to questions regarding what Atencio actually witnessed in terms of Timmons being taken into custody, and for that reason also was not unduly prejudicial.  Finally, defendants did not object to this statement during the trial, and the district court did not plainly err by not striking it sua sponte.

16

**h.** We reject Mahon's argument under Federal Rules of Evidence 401, 403 and 404(b) that the district court erred in admitting testimony by Simpson regarding his knowledge about individuals who possessed cocaine. The statement was relevant under Rule 401 to the government's burden of showing predisposition. It was not offered as character evidence, nor does it refer to evidence of prior bad acts, and thus Rule 404(b) is not relevant. Finally, it was not unduly prejudicial under Rule 403 given the central role of defendants' entrapment defense in this case.

### 10. Application of Sentencing Guidelines to Drug Trafficking

We reject Black's argument that the district court abused its discretion in sentencing him based upon the Guidelines applicable to drug trafficking rather than those applicable to robbery because his offense factually resembled a robbery more than drug trafficking. The district court's adherence to U.S.S.G. § 1B1.2 was not an abuse of discretion.

### 11.  Application of Statutory Minimum Sentencing

Mahon's argument that a statutory minimum sentence should not bar the application of a lower sentence if appropriate under the sentencing factors articulated in 18 U.S.C. § 3553(a) is foreclosed by *United States v. Wipf*, 620 F.3d 1168, 1170-71 (9th Cir. 2010).

**AFFIRMED**.